Thompson, nice to see you. Good morning, Elizabeth Thompson, pro bono counsel on behalf of plaintiff appellant O'Neal Johnson. The district court erred in this case in granting summary judgment in favor of the defendant and for the reasons in our brief and that I will discuss, we would ask this court to  I want to go through some of the facts because I think it's important in this case where the district court relied on facts that were in dispute and also construed a number of differences in favor of the defendants when it shouldn't have. On the night of April 21st, 2019, plaintiff was walking to a bus stop to return home from visiting a friend. At approximately 3 a.m., he encountered four to five police officers standing around on South Champlain Avenue. One of the police officers who was standing there smoking a cigar stated, man, and I apologize for my language, man, that's that black MFR from 76th Street that got into it with the sergeant. That's not captured on the police body-worn camera and in fact, when you watch those police body-worn cameras, it's clear that they pick up right in the middle of a conversation. So everything that happened before that is in dispute, but our client, my client testified that that is what was said to him and at that point or some point thereafter, the cameras turn on. Plaintiff has a history with the Chicago Police Department. He's been arrested 57 times. He's also sued the Chicago Police Department a number of times. Those facts are not in dispute. At some point during the interaction with the police, their body-worn cameras are turned on. It's clear, like I said, that the interaction began before those cameras are turned on. Those videos, and we have several, show that plaintiff is arguing with the officers. There's no question about that and the argument is primarily about race. Plaintiff testified that he was very upset in his deposition, that he was very upset about the comment that was made by the sergeant that occurred before the video was turned on. He never makes any threatening gestures. He never moves closer to the crime scene that the officers argued they were attempting to  Instead, he says multiple times, and in fact his body language is, I'm going to go the other way. I'm going the other way, but first I want to give you a piece of my mind about what I'm upset about. Without giving him the opportunity to comply with their demeaning and successive demands that he immediately leave, the officers swoop in and arrest plaintiff. He's put into a squad car, handcuffed and unrestrained by a seatbelt. At that point, he's recklessly driven by defendant Hecker, who despite having no emergency, and this is shown on the videos, has his lights on, runs several red lights, and drives excessively fast. He then slams on the brakes, throwing plaintiff into the plastic dividers, he's handcuffed and unseatbelted, and plaintiff, who had been talking the entire time up to that moment, he screams out in pain, and then completely stops talking. The officers don't check on him. They continue driving, and in fact, continue driving for three minutes without doing anything. Again, these facts are shown on video. Can I go back to where you started a little bit? Of course. And that is, the point you're making about there may have been something said that was picked up on, or wasn't picked up on the recording, but your client was, he was at a crime scene that was being processed in response to a shooting. He was near, yes, he was near a crime scene, yes. Pretty close. I think the video shows, I mean, it's hard to tell exactly how many feet, but probably similar to where I am to that wall. Pretty close. And then, he's told multiple times, they're definitely jawing at one another. I think you can watch that on the video, it's clear. But he's told multiple times, hey, hit the road. He is told multiple times, and in different ways, walk away, walk backwards. And it just, it so looks like he intended to get arrested. When I sat there and I watched that, I didn't have, I have any idea he'd been arrested, what, 30 times, or 40 times, or some big number of times by CPD. And it doesn't really matter. It's not relevant. What's relevant is what happened here. Correct. But it just looked like, is this guy trying to get arrested? What is he doing? I mean, I watched the same videos that you did, and that's not my interpretation of it, and I think that's an inference that may be drawn from the videos that's not appropriate on summary judgment. I don't, I mean, I can't answer the question of what his intent was, because I'm not sure  No, I know, but it just, it looked, there were just a lot of warnings given. A lot of statements given. Hey, you know, move along. I think it's a fairly chaotic situation, and I think that you have to think about what happened before that, and if we're talking about his intent, I think you have to think about what, you know, what he went into that situation with, his history with the police. And I think I can appreciate that, as far as what Mr. Johnson, if we accept the facts, is presented by Mr. Johnson, of how he perceived the officers were engaging with him. Okay? If we, even if we accept that, and I believe Judge Jenkins said, okay, if I step away from whether or not there was probable cause for disorderly conduct, this is where Judge Scudder is going, is how do we get around, though, that at least there was arguable probable cause, if we just take it from the moment the body cameras come on? Right, and so I think you've hit the nail on the head, that the question, the district court said, the question of probable cause is a close one, but I'm deciding this on arguable probable cause, I'm saying that the officers had arguable probable cause, and therefore they're entitled to qualified immunity. I think this court has said several times that questions of qualified immunity are not ones that are well resolved on summary judgment, and I think with regard to the arguable probable cause question itself, that he does indicate that he's going to leave. All of this happens very quickly. Those videos that capture the arrest from a number of different angles are all just a couple of minutes long. It all happens very, very quickly. He's told to walk away, to back up. He does back up, and in fact, he's saying, I'm going to go the other way, I'm going to go the other way. No, he says, I am with Waste Management, and I want to go that way. He does say he's pointing toward the active crime scene. He does say that at one point, but then he indicates he's going to go away, he's going to walk away, and in fact, starts backing up. One of the officers, he says, Mr. Johnson says something along the lines of, you can't tell me what to do, and they say, well then, why are you backing up? He is complying with their commands, and it's only at the point that he's telling them, I am unhappy with what's going on, I'm unhappy with the way that you are treating me, that they swoop in and arrest him. So the arguable probable cause question looks at what was happening in the totality of the circumstances, and in this case, the only thing that was happening was they were telling him to move away, he's moving away, they're still sparring with each other, absolutely, and our argument is that they arrest him based on their displeasure with what he's saying. There is clear case law coming out of this circuit that says you cannot arrest an individual for disorderly conduct for speaking their mind. That is a violation of the First Amendment, and we've cited some of those cases in our brief, but Rooney v. Beiser says probable cause would be lacking, and that's 742 F. 3rd, 737. Probable cause would be lacking if Rooney had done no more than shout at Beiser. Payne v. Pauley, which is 337 F. 3rd, 767, it is well settled under Illinois law, and was well settled at the time of Payne's arrest, and this was in 2003, that the resistance must be physical, mere argument will not suffice, in fact, the First Amendment protects even profanity-laden speech directed at police officers. So our position is that there was not even arguable probable cause, or at least there's questions of fact as to whether or not there's arguable probable cause. But I'm trying to make sure that I'm following, even taking it out of the First Amendment context, that what he was charged with here, though, was reasonable, issued, they're telling him, walk the other way, not only stop speaking, so taking it out of the First Amendment context, but we're needing you to not approach this active crime scene. Correct. And he's still moving around in the area. I think the video shows him walking backwards, he walks backwards maybe five steps, he's probably about five feet at that point from the closest officer, and again, these are my own inferences from watching the video, and at that point, they continue talking, and he kind of shifts his weight a little bit, and then they come in and arrest him. So I think he was in the process of complying with those demands, and so that's why we believe or we are arguing that there's not arguable probable cause for the wrongful arrest claim. We've also stated, and I really wanted to focus on that claim and also the excessive force claim, because I think those are where the state created danger. I'm certainly not abandoning that claim by any means, and I address it in our brief, and I'm happy to answer questions about it, but I think that the wrongful arrest and the excessive force claims are the claims where the district court most clearly erred, and I think with regard to the excessive force claim, what the court did in that claim was said, kind of similar to what it did in the wrongful arrest claim, it said the question of whether or not defendant Hecker's conduct was reasonable and his force was excessive is not a question that I can answer on summary judgment. However, there's no clearly established case law, so he's entitled to qualified immunity. That was an error, because there is clearly established case law. There's clearly established case law from this circuit, Salinger v. Oaks, 473rd F. 3rd 731, that says gratuitous use of force on a handcuffed detainee is a violation of the Constitution. Stockton and Williams are some other cases that we cite in our brief that are Seventh Circuit cases that stand for... What is the force that Officer Hecker applied? The force that he applied was he knew that a plaintiff was not seat belted. But because this is an excessive force case under the Fourth Amendment, it's objective, right? Yeah, that's correct, yes. And the way that he drove his car in a manner... First of all, he's not responding to an emergency. There is no reason he needs to be driving in the way that he was driving, which I think that video shows, or at least there's a question of fact, because our client has testified that he was driving excessively fast. He was asked to slow down by plaintiff. He's running red lights. He has his lights on. None of those things are necessary for the situation at hand. He slams on the brakes and throws plaintiff into the divider, which causes him to lose consciousness for several minutes. So that's what the excessive force claim is based on, and there's a robust consensus of persuasive authority in addition to the Seventh Circuit cases that we've just cited that talks more specifically about this type of force, where, again, it's the gratuitous use of force on a detained... That's where I have some concern with the argument. So I think you're referring to the Fourth and Tenth Circuit case law. Correct. It gets more factually analogous for you. That's why you have it in your brief. Correct. Okay. But hasn't the Supreme Court, for better or worse, told us that we do need to analyze this at high levels of factual specificity? Yes. I'm sorry to interrupt you. No, go ahead. Yes, I think that's right. I don't think it has to be such a high level that we need to look at, okay, the exact same situation. We do have those cases, and admittedly, they are not from this case. Yeah, it doesn't have to be identical. But you have cases like... You have a couple of cases, anyway, that they've decided, like Hope v. Pelzer or Taylor v. Riojas, but it's a pretty narrow category of what they call obvious constitutional violations.  Okay. But I didn't see you arguing that it's just obvious. Yeah. I mean, I think that on hindsight, maybe it's something that we should have argued in our brief, and I do think... It's a pretty limited category. Yeah, it is. And so I see I'm kind of in my rebuttal time here. We're going to give you rebuttal time. Thank you. Just to address that question, I don't think that it has to be exactly identical, as Your Honor has said. And I think that the case law that we rely on from this circuit does address the issue of when you have an individual who is restrained, in this case in handcuffs, that there is no... And not resisting, right? He was not resisting. He was in the backseat of the car being transported to lockup. He was not resisting. That in those circumstances, any use of force is unnecessary and unconstitutional. So I think those cases, although it would be great if we had a Seventh Circuit case that had the same specificity as the ones that we cite out of circuit, I think those cases are enough that the officer should have known that this was unconstitutional conduct. Okay. Very well. You want to save the rest of your time? I would like to. Thank you. Okay. You're welcome. Mr. Alperstein, correct? Yes. Good morning. Good morning, Your Honors. May it please the Court. The District Court's grant of summary judgment to defendants on all of Johnson's claims was correct and should be affirmed. Today I will focus on the claims of false arrest, excessive force, and delay of medical care, although, of course, I'm happy to answer any questions this Court has on the other claims as well. First, Johnson's false arrest claim fails because the officers had probable cause to arrest him for violating the disorderly conduct ordinance. That ordinance prohibits failing to obey an order of the peace officer where it is reasonable to believe that the order is necessary to protect public health and safety. Can you, just so we can level set on the facts a little bit, the body cams often will start a little bit late, but are not right at the beginning of some kind of altercation. Ms. Thompson's pointing out something that was said that was racially derogatory, kind of inflammatory at the beginning of the, you're not disputing that we should view the facts in the light most favorable for the plaintiff in this posture, right? No, of course not, Your Honor. Including accepting that one? Yes. Okay. That's correct. However, that does not impact the false arrest analysis here, and first I want to point out that Johnson did not argue in the district court or on appeal that the officer's order to leave was not reasonably necessary to protect public health and safety, so any such argument would be waived. Johnson argues, and does today as well, that he was in fact complying with the orders to leave, but was arrested before he could do so. In here, the video evidence conclusively disproves that assertion. The video shows that Johnson was ordered at least ten times over the course of a full minute, with plenty of time to comply, to leave the area, and he in fact never left. In fact, Johnson did not even turn around at any point to leave, and he gave contradictory verbal indications about whether he intended to leave or intended to proceed into the crime scene. In that case, the officers had probable cause to believe that Johnson was failing to obey their orders to leave, which constitutes disorderly conduct under the ordinance. Alternatively, the officers had probable cause to arrest Johnson for violating Illinois' disorderly conduct statute, which prohibits the creation of a disturbance or a breach of the peace. Illinois courts have held that creating a loud disturbance in the middle of the night in a residential area does constitute disorderly conduct under that statute, and that is exactly what happened here, as we can see from the video footage. The officers are also entitled to qualified immunity on this claim. As Your Honors have mentioned, the Supreme Court has explained that in a false arrest case, the plaintiff must point to precedent establishing with a high level of specificity that the circumstances confronting the officers do not constitute probable cause. Johnson did not even attempt to identify such a case until their reply brief, thereby waiving the argument, but waiver aside, the reply cites cases primarily from Massachusetts and Minnesota, the council mentioned the Seventh Circuit case as well, but the important point is all of those cases evaluated in an entirely different type of criminal offense. Those cases evaluated disorderly conduct statutes prohibiting, I believe the language is something like noisy, boisterous behavior, and those cases talked about whether speech alone can violate that provision. Here, the disorderly conduct ordinance prohibits conduct. It prohibits failing to obey an order of a peace officer. The order was for Johnson to leave the area. He did not leave the area, and so those cases do not even apply to the type of crime and the type of conduct at issue here. They certainly do not clearly establish that the officers did not have probable cause to arrest Johnson. Summary judgment on Johnson's excessive force claim was also proper because Officer Hecker's conduct did not violate the Constitution. Where all the facts necessary for resolving a claim are undisputed, this court determines objective reasonableness as a matter of law. Here, all of the relevant facts... Are there any facts left for a jury to decide? No, Your Honor. All of the facts here are either depicted on the dash cam video or are uncontested by the parties. So, for example, Johnson claims that Officer Hecker was speeding. The video does not indicate whether that's true or not, but for purposes of summary judgment, we have accepted that he was exceeding the speed limit. In everything else, all other facts about the manner in which Officer Hecker drove and the manner in which he applied the brakes are shown on the video. The video shows that Officer Hecker did not swerve or drive erratically during the trip, and even with the braking, the video belies any assertion that there was a slamming of the brakes or a sudden jolting stop. You can see in the video that... There's one aspect of this that's troubled me a little bit, okay? And that is the failure to ensure he's seat-belted, okay? How does that work into the legal analysis that you're advocating for? We know, as a matter of fact, he wasn't seat-belted. It's not his responsibility to seat-belt himself. He's pushing back on whether he should be seat-belted or not, but the fact of the matter is the squad car leaves, the radio car leaves the scene with him not seat-belted. How does that play into this, if at all? The failure to buckle Johnson's seat-belt, or really Johnson's refusal to allow the officers to buckle his seat-belt, I think is argued more with regard to the state-created danger claim, but on excessive force, I do think that is... But that's the situation...  The reason why I think, I mean, you're correct, the fair inference, at least viewing the facts in the light most favorable to Mr. Johnson, okay? The only reason he's able, when the brakes go on, to fly forward and cut his lip open on that, whatever it is, the glass shield or the plexiglass or whatever they call it, is because he's not seat-belted. Now, I would think it's probably highly unlikely that he would injure himself in the same way if he was seat-belted. Is that not a fair inference at summary judgment? Yes, I think that's a fair inference. And the reason, I mean, yes, he pushed back on the seat-belting, but the police officers, don't they bear a responsibility to seat-belt the guy? They do, and Officer Hecker was reprimanded for not ensuring that the seat-belt was fastened. And certainly, Officer Hecker knew it when he was driving that Johnson was not wearing a seat-belt. And you knew that you were speeding. I'm sorry? Officer knows that you're going to speed, you're going to run red lights, and someone with their hands behind their back will have no way to protect themselves if I hit the brakes. A reasonable officer wouldn't know that. Correct, but the question is whether Officer Hecker's conduct during the drive, including his knowledge that Johnson was not wearing a seat-belt, was objectively reasonable such that it violated the Fourth Amendment. And here, Officer Hecker, as I mentioned, was not swerving, was not driving erratically, and when he decelerated at the red light, it took, I believe, five or six full seconds of deceleration to stop at a red light. And the question is whether that... But it was abrupt enough that he slammed his head or slammed his face into the shield and cut his lip open. Well, the momentum of the deceleration did cause Johnson to fall forward, but the mere fact that he was injured does not mean that Officer Hecker's conduct violated the Constitution. Officer Hecker responds, I'm sorry, so is that not awareness? I think that that comment goes to what Officer Hecker was thinking or what he meant by that I think gets into subjective intent, subjective motivation, which is not a part of the objective reasonableness analysis. The focus, I think, needs to remain on his actual conduct in the case, which consisted of exceeding the speed limit and decelerating over several seconds to stop at a red light. And I'm aware of no precedent suggesting that conduct, anything like that, violates the Constitution. See, that's why it surprises me. I mean, this is just a reaction. You can tell me I'm wrong. It surprises me that you're kind of fighting on prong one or you're pushing back so hard on prong one of the qualified immunity analysis because it does seem to me that there's a real possibility a jury could find a constitutional violation here. When you take all these circumstances and you add them up, it's not Mr. O'Neill's responsibility to seat-belt himself. And yes, he was being a difficult customer that night and all that, okay, but it's not his responsibility. It's the police department's responsibility in that way. But then, you know, it seems your position gets much stronger on prong two. Was it a clearly established violation? It just surprises me you're pushing back so hard on prong one. Well, we argue both, Your Honors, and so I want to make our arguments clear. And on that, I'd like to make two points on that. The first is that as to whether a reasonable jury could find the conduct reasonable, the important point is that in this context, it is a question for the jury to resolve disputes of fact that might determine the outcome of the reasonableness analysis, but where the facts are not in dispute, the determination of reasonableness is a legal question for the court. The second point, and I appreciate Your Honor raising it as I'd like to address. Yeah, so all you're saying with that is just take all the facts in the light most favorable to Mr. Johnson, hold them static, and now go to prong two. That's all you're saying. We do this all the time. Officer Hecker was entitled to qualified immunity because the Supreme Court has emphasized, as Your Honor noted, the need for specificity, particularly in the realm of excessive force. Johnson cites a handful of cases that he calls this broad principle of you cannot apply force to a restrained arrestee. That is far too general or far too high a level of generality to support or to defeat qualified immunity. All of the cases that Johnson cites involve either unrelated situations such as Salinger where officers beat a hobbled and restrained arrestee with flashlights in the head, or other egregious situations where the officers are swerving all over the road, tossing the plaintiff back and forth around the car. One of the cases I think the car hit a speed bump and went airborne. Needless to say, these cases do not bear any resemblance to Officer Hecker's conduct here. And so no authority clearly establishes that the manner in which Officer Hecker drove and applied the brakes violated the Constitution. Finally, summary judgment was proper on Johnson's delay of medical care claim based on causation. This court has explained that a plaintiff in such cases must present verifying medical evidence that the delay itself, independent from the other circumstances or from the impact, caused the plaintiff some measurable injury. Here Johnson has adduced no evidence whatsoever that the three-minute delay in seeking medical attention caused him any injury. Even on appeal, he offers only speculation that it's possible that the delay could have contributed in some way to his general injuries, but this court has held time and again that such speculation is insufficient to defeat summary judgment. As with the other claims, the officers are entitled to qualified immunity on the medical care claim as well. Johnson cites no case, and we have found none, finding a constitutional violation in similar circumstances. He argues only the broad principle that when an arrestee loses consciousness, medical intervention is warranted. But again, specificity is crucial in this context, and such general principles cannot defeat qualified immunity. With that, Your Honors, we rest on our briefing on all other matters, and we ask that this court affirm the decision of the District Court. Okay, very well. Thank you, Mr. Alperstein. Ms. Thompson, we'll give you a couple minutes. We asked you a lot of questions, and we'll give you the rebuttal time. I just have a few brief things to say, so I appreciate the additional time. On the excessive force claim, I just want to start with some of the questions that were asked with regard to the seatbelt and whose responsibility the seatbelt was. A defendant, Hacker, testified in his deposition that even when an arrestee in their car refuses a seatbelt, that they are supposed to seatbelt that person, and that he usually does. So it was a conscious decision for him not to in this case, and I think that when you—the other question that was asked were are there any facts on this claim left for the jury. I think there are facts that are left for the jury. Although Mr. Alperstein is saying, yes, we agree for purposes of the motion for summary judgment that he was speeding, and he's still, I think, disputing whether or not he slammed on the brakes, didn't slam on the brakes. I think there's also dispute about, you know, the circumstances around what was happening in that car, if he was being asked to slow down several times or one time. Let's move quickly, though, to the second prong. Sure. Yeah, so on the second prong, I think that the issue is specificity, right? And so we have Seventh Circuit case law that does say on a more broad brush that when you have—and it's not just, you know, saying, oh, any time you hit somebody, that's excessive force. This is saying when you have a restrained individual who is no longer resisting arrest, and I think you have to look, too, at the factors of what's excessive force in the case law, and some of those are the seriousness of the crime, you know, whether the person is evading or resisting arrest. None of those circumstances were present here, and under the case law, and we've cited several Seventh Circuit cases, and, you know, the one, Salinger v. Oaks, is, as Mr. Alberstein said, but I think the principle applies. Stanley v. Oaks? Salinger, S-A-L-L-E-N-G-E-R, I believe. If you need the citation, I can get it for you. It's in your brief. It is, yes. It's in our brief. And there's a couple of other Seventh Circuit cases that speak similarly to that proposition, but I think that— You never finished. You were saying that when there's an individual that is restrained that is not resisting. I'm sorry, yes, that any use of force on that individual is excessive. So there doesn't need to be a use of force, and that is not—that's something that should be clear to defendant hacker, and there's also a robust consensus of persuasive authority. That is something that this court can consider, that this court— I think the Supreme Court has said that that's something that can be considered. I think this court has said that's something that can be considered, and we have cited not just one but several cases from other circuit courts. They aren't district court cases. I think there might be a couple of district court cases, but from other circuit courts that say that this type of conduct is unconstitutional, and I think that's pretty plain. And Judge Scudder, I think you asked a question when I was up here before about is this something that's plainly unconstitutional. I'm not sure it quite rises to that level, but I think it is pretty clear that this is not conduct that an officer should be engaging in, and I think when you look at the seven circuit cases we've cited and you look at that robust consensus of persuasive case law, that it should have been clear to defendant hacker that this conduct was excessive force, and for those reasons we think he's not entitled to qualified immunity. I see my time is up, so I would ask that the court reverse the district court's granting of summary judgment, and thank you for your time. You're quite welcome. Mr. Alperstein, thanks to you and your colleague. Ms. Thompson, to you and your colleague as well. You mentioned at the outset that you took this case on pro bono as a pro bono matter. Did you take it on court appointment or just your firm doing it pro bono? I'm not sure if the underlying case, I think the underlying district court case was taken on pro bono, but we've taken the appeal on our own. Okay. We very much appreciate that. Mr. Johnson should know he was well represented, and the defendants as well. So we appreciate the advocacy. We'll take the appeal under advisement.